## Guthrie v. Sovereign Camp, W. O. W.

(Decided Nov. 9, 1934.)

CLEMENTS & CLEMENTS for appellant.

SIDNEY B. NEAL and O. L. FOWLER for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

On March 26, 1920, the Sovereign Camp of Woodmen of the World, hereinafter referred to as the insurer, issued to Granville C. Guthrie, hereinafter called the insured, a certificate of insurance, by the terms of which, upon his death, the beneficiary was to receive the sum of $1,000. The assessments were to be paid monthly at the rate of $4.66. In addition to the provision mentioned, additional benefits were provided, of which the following was one:

"The member on attaining the age of 70, if physically disabled, may surrender this certificate for cancellation, and receive in settlement thereof, as an old age benefit, less any indebtedness to the Society, the full amount of reserve accumulation, pay-

able in one sum, or take the value thereof, payable in ten equal annual payments, or as a life annuity, or in paid-up insurance.''

The certificate contained a provision as to the payment of dues and the result upon the failure to pay dues as required. Without quoting that provision, it appears that camp dues were to be paid on or before the last day of any month, and, on failure to pay, the certificate holder stood suspended, and during the period of suspension the certificate was void and of no force.

Insured instituted action against the company, and in his petition it is asserted that he was seventy years of age on June 28, 1929, on which date he was a member of the insurer in good standing, having paid his monthly assessments up to and including the date named, and further alleged that he was at said time physically disabled. It is averred that he advised the insurer that he was physically disabled, and desired to receive in settlement of his certificate the old age benefit payable in one sum, but that the insurer refused to make payment, and gave as its reason that he had failed to pay his monthly payments from and after September 1, 1929, and had been suspended, and that the insurer denied liability for the payment of the old age benefit, as provided by his certificate.

It is further alleged in the petition that the insured had a reserve accumulation in his certificate, but did not know the full amount thereof, payable to him in one sum as an old age benefit. He states it to be $800, which he claimed was due and owing him under the terms of his certificate, and called on the insurer to divulge the correct amount of his reserve accumulation, and closes his petition with a prayer for judgment in the sum of $800, with interest from June 28, 1929.

A demurrer was sustained to the petition, and thereafter an amended petition was filed in which it was alleged that prior to June 28, 1929, and again prior to August 1, 1929, and at a time when he was in good standing, he advised the insurer that he was physically disabled, unable to perform manual labor so as to earn a livelihood, and that he wished to receive the old age benefit in settlement of his certificate. The court overruled a demurrer to the pleading as amended, whereupon the insurer answered and denied generally all the

allegations of the petition, and pleaded affirmatively the fact that the insurer was a fraternal benefit association; also pleaded the history of the insured having become a member of the fraternity in 1910, and in a general way pleaded the acceptance by insured of the terms and conditions as to complying with the constitution and by-laws upon his initiation, and acceptance of the certificate, which is in question here, under the same terms and conditions with relation to complying with the by-laws and terms of the certificate. It is then alleged that the insured, in the month of August, 1929, discontinued the monthly payments required by the certificate and by-laws, and stood suspended on September 1, 1929. Hence it was said that his certificate was never in force on September 1, 1929, or at any time thereafter.

It is alleged also that the insured never, at any time prior to September, 1929, surrendered his certificate or made application for the payment of the reserve accumulation as an old age benefit. During the course of the pleading, the insurer admitted that, if plaintiff was in fact physically disabled prior to September 1, 1929, and had surrendered his certificate for cancellation, accompanied with an application for the old age benefit after the July installment had been paid, there would have been due and payable to him as an old age benefit, upon such application, surrender, and cancellation of his certificate, the sum of $385.10. But the insurer denies that said sum, or any sum, was then due, because of the suspension of the insured on account of nonpayment of the August, 1929, and subsequent installments. The insured demurred to paragraphs 3 to 9, inclusive, of insurer's answer, and, without waiving demurrer, filed reply, which denied such portion of the insurer's answer as alleged that he had been suspended, that his certificate was void, and that he had discontinued his monthly payments, and that his certificate was not in force on or after September 1, 1929. He also denies that he did not, at any time prior to September 1, 1929, surrender his certificate or make application for the old age benefit. The insured then pleads that he lacked information as to whether the sum of $385.10 was the amount of the accumulation, but still averred that the amount due him was as alleged in the petition. He then follows with an allegation that there was set aside to him as a reserve accumulation, in the hands of the insurer, at least the sum of $385.10, as an old age benefit, which belonged to

the insured and to which he was entitled; that said sum was ample to have carried the monthly assessments on his certificate for many years and far beyond the time of the filing of his petition. Then came a rejoinder from the insurer by which the allegations of the insured's reply were denied. A demurrer to the specific paragraphs of the answer was overruled, and thus issue was joined.

The case was called for trial before a jury, and at the close of the evidence for the insured, which consisted of the testimony of the insured and his daughter, the insurer moved the court to direct the jury to return a verdict favorable to it, and the insured moved the court to return a verdict for him in the amount of $385.10. The court overruled the latter motion and instructed the jury to return a verdict for the insurer, which was done. Proper objections and exceptions were made and saved to the court's rulings on the motions. A motion for a new trial was filed by insured, the grounds being, first, that the court erred in overruling the demurrer to the specific allegations of the answer; second, because of the court's refusal to instruct the jury to find for the insured in the amount of $385.10; and, lastly, because of the peremptory instruction to find for the insurer. The two latter grounds only are discussed in brief for the insured, it not being insisted that the court erred in overruling the demurrer to the affirmative portion of the answer, and, without going into details, the court holds that the demurrer was properly overruled.

It seems clear that the lower court correctly dismissed the insured's motion to instruct the jury to find for the insured in the sum of $385.10, claimed to represent the accumulated reserve, since it is obvious that no proof at all was presented to the jury on this point. Neither the insured nor his daughter testified on this matter, because, no doubt, neither had any knowledge of the reserve value. The insured did not offer in evidence any of the pleadings; it did not offer the insurer's answer, as far as the record discloses. It does appear that the insurer took in the form of interrogatories, the deposition of John T. Yates, the sovereign clerk of the lodge, who testified that, had the insured complied with the provisions of his certificate by the surrender of the same for cancellation, accompanied by satisfactory proof of his physical disability, at or past the age of 70, the insured would have been entitled to an old age benefit

of $385.10. But this proof was not presented to the jury. It appears that counsel for the insured, after the introduction of the evidence, offered to read in evidence from the deposition of Yates, two questions and answers contained in the cross interrogatories, but the court overruled this offer, evidently on the idea that there was no proposal made to read the entire deposition. However, even had the questions and answers been read to the jury, it does not seem the proof would have been sufficient to warrant a directed verdict for the insured. It was an admission of the amount of the reserve accumulation, but it was made plain that it was only due to the insured in case certain prerequisites had been carried out by the insured. Nor was that proof, in the absence of testimony as to certain prerequisites, sufficient to take the case to the jury.

While otherwise insisted by counsel, it may for the purpose of this opinion be assumed that the court gave a peremptory instruction to find for the insurer, not because of the claim that dues had not been paid in conformity with the requirements of the insurer, but mainly because of the failure of any proof that there had been a surrender of the certificate or any attempt to surrender it, or that there had been any application for disability benefit, or any fair showing that the insured was physically disabled.

Only two witnesses testified for the insured, he and his daughter. The insured testified that he was 70 years of age in June, 1929; that in December, 1928, or January, 1929, and perhaps some time in April, obviously before he was 70 years of age, he talked to Earl Miller, who was clerk of the local camp at that time; that he told Miller he was "disabled to do anything," and wanted to put in his application under the old age benefit; and that Miller told him that he had "written them and hadn't got any information." He told Miller that he would be 70 years of age in June. The insured says he made no application after that.

From a careful survey of the evidence, the foregoing was all that he at any time told Miller. In describing his physical condition in June, 1929, he told the jury that he "couldn't do anything hardly"; that he had been a farmer all of his life and was not able to do much work in June, 1929; that he could not do labor in the field like he used to do; could not plow corn or work in the harvest field; that he could hoe a little sometimes,

cut bushes, and fix fences; he could work three or four hours and sometimes half a day, but that he had to "take it easy." He further said that he was unable to conduct and operate his farm as it should have been because of his physical disability, all of which may have been true, but insured nowhere claims that he told Miller anything other than that he was "disabled from doing anything." On cross-examination he admitted that he did not offer to turn the certificate over to Miller or present any proof or other evidence as to his state of health. It is also admitted by insured that he paid no premiums after July 1, 1929, and he gives as his reason that he had been informed that, if he reached 70 years of age, he had a paid-up policy.

Miss Cora Guthrie, the daughter of the insured, testified that in April, 1929, she went with her father to see Mr. Miller; that at that time her father asked Miller to put in an application for old age disability, and Miller said he would do it. She came back to see Miller in June and paid her father's dues for 2 months, and Miller told her that nothing had been done; that he had written, but could not get anything from them, and suggested to Miss Cora that she write to the head camp, and later she wrote the following letter which was introduced in evidence:

"Owensboro, Kentucky
"July 22, 1929

"Sov. John T. Yates, W O W Building, Omaha, Nebraska.

"Dear Sir: Sov. Granville C. Guthrie has a ctf. No. R-158171-B with Camp No. 342, located at Ensor, Kentucky. The amount of this certificate is $1,000. My father has always thought his policy was paid up at the age of 70 years. He was 70 years old in June, 1929, and would like to know if he should keep on paying monthly premiums at rate of $4.66 each month. Kindly let him hear from you in regard to the above.

"Very truly,

"[Miss] Cora Guthrie."

To her inquiry came the following prompt response:

"Omaha, Neb. July 25, 1929.

"Miss Cora Guthrie, Route 1, Owensboro, Kentucky
"Dear Madam: We are in receipt of your

communication of the 22nd inst., with reference to the certificate held by Sov. G. Guthrie. This member's certificate is in force for the full face value of $1,000, and provides that payment on installments be made during life in order that the beneficiary may receive the proceeds thereof. Should Sov. Guthrie become disabled at any time he may make application for cash disability settlement.

"Fraternally yours,

"J. T. Yates, Sov. Clerk."

When they came to question Miss Cora on the matter of her father's disability in June, 1929, and which seemingly has no bearing on the case, since it related only to his physical condition at that time and not to what he claims he had told Miller, she seemed quite reluctant to testify in a manner indicative of a disabled condition of her father. The most she would say was that her father was "breaking and breaking fast"; that he attended the farm and did as much as he felt like he could do, and on cross-examination she testified that he "hadn't had any illness at all; he was just like anybody else with old age." She also said that, when she went to see Miller in April, her father told Miller, "I don't feel like work," and asked him to enter up his disability at 70, and Miller replied, "I will be glad to do it." With reference to a conversation with Miller, she was asked and answered the following questions:

"Q. Didn't you tell him last year in the conversation you had with him that your father was not claiming that he was disabled at 70 and did not want anybody to say that? A. I said, 'I can not conscientiously state at all father is disabled,' and I said 'I am not asking you to state that. Let the lodge decide that.'

"Q. Didn't you say your father was not wanting any one to state that? A. I said that was for the medical examination to show.

"Q. Didn't you in that conversation say to him, 'My father does not claim that he was disabled at 70, or does not want any one now to say that?' A. I said 'I am not asking you if he is disabled, but he applied to the lodge for disability and let the lodge decide whether he is disabled or not.' "

Counsel for insured contends that the case was defended on the theory that the certificate was void be-

cause of a failure to pay assessments. The defense goes further than that. It was contended that the insured was not entitled to the particular relief sought, because in addition to the above defense there was no application for the benefit, that there was no surrender or offer of surrender of certificate for cancellation, and that there was no showing of physical disability. None of these requirements were shown in such manner as justified the court in allowing the case to go to the jury. It may be that there is a sufficient accumulation in the reserve belonging to the insured to carry the assessments for many years, as is claimed, however, that fact, if it be a fact, did not alone authorize a peremptory instruction for the insured, nor would it have justified the court in submitting the issue to the jury under the pleadings and proof.

From a reading of the evidence, it occurs to the court that the insured was laboring under the impression that, when he attained the age of 70, by reason of his age, he was to be relieved of further assessments, and was entitled to, what he and his daughter called, a paid-up policy. This is quite apparent from a reading of the letter of Miss Cora to Yates, the chief clerk of the insurer, in which no mention is made of disability, and which contains the single inquiry as to whether or not her father, being past 70, should keep on paying monthly premiums at the rate of $4.66 per month, and in Yates' reply advising her that, "should Sovereign Guthrie become disabled at any time he may make application for a cash disability settlement." Notwithstanding this plain advice and indication that no such application had been made, the matter seems to have been dropped until the suit was filed in June, 1931.

It is the conclusion of the court that the lower court properly refused to give the insured a peremptory instruction and did not err in giving the one asked by the insurer.

Judgment affirmed.